UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**PAMELA BEASTERFELD,**

    **Plaintiff,**

v.                                                            CASE NO. 8:10-CV-0979-T-30EAJ

**MICHAEL J. ASTRUE,**
**Commissioner of Social**
**Security Administration,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

       Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").

       After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties in this case, the undersigned recommends that the Commissioner's decision be affirmed and this case be dismissed.

       In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's

findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner.  See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard.  See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required.  See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## Background

Plaintiff filed applications for DIB and SSI in October 2002, alleging a June 19, 1975 onset date. (T 66) The applications were denied initially and upon reconsideration, and an administrative hearing was held on October 5, 2004. (Id.) An ALJ subsequently denied the applications, however, the Appeals Council vacated the ALJ's decision and remanded the case because the ALJ failed to sufficiently evaluate Plaintiff's mental impairments, did not provide adequate explanation for a limitation to simple, repetitive job tasks, and did not perform a function-by-function assessment of Plaintiff's physical and mental abilities.  (T 74)

Supplemental hearings were held in November 2005 and May 2006.  (T 38)  At the latter, Plaintiff amended her alleged onset date to October 4, 2002.  (Id.) The ALJ again denied Plaintiff's applications, but the Appeals Council again remanded the case, finding the ALJ did not specify the weight assigned to certain opinions, did not provide adequate rationale for not finding Plaintiff's mental impairments severe, and did not specify the extent to which Plaintiff needed a sit/stand option. (T 50, 133-34)

Another hearing was held in October 2007.  (T 11)  Fifty-one years old at the time of the

hearing, Plaintiff had a limited high school education, training in floriculture, and past work experience as a dog groomer, animal caretaker, food deliverer, and cashier. (T 574, 599, 601) Plaintiff testified that she stopped working in October 2002 due to back and leg problems. (T 576)

On November 28, 2007, the ALJ again denied Plaintiff's applications. (T 26) The ALJ found that Plaintiff's severe impairments included chronic cervical pain secondary to moderate degenerative spurring C5-6 and C6-7, chronic low back pain secondary to central spinal stenosis at L4-L5 without disc herniations, degenerative joint disease in both knees, and a residual condition post remote injury to the right shoulder, but that these impairments, individually or in combination, did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. (T 14, 18) Despite these impairments, Plaintiff was determined to have a residual functional capacity ("RFC") to perform sedentary work subject to the following limitations: no more than occasional bending, stooping, climbing, and prolonged standing; a sit/stand option at will; and limited pollutants. (T 18) Finding Plaintiff capable of performing jobs available in significant numbers in the national economy, such as cashier, benchworker assembler, and packager, the ALJ concluded that Plaintiff was not disabled during the relevant period. (T 24-25) On February 26, 2010, the Appeals Council denied review of the ALJ's decision, making it the final decision of the Commissioner. (T 2)

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

## Analysis

Plaintiff contends that the ALJ erred by: (1) failing to identify severe impairments; (2) not finding that obesity and an inability to ambulate effectively satisfied a listing; (3) not finding Plaintiff

3

disabled pursuant to 20 C.F.R. Part 404, Subpart P, App. 1 § 12.05C ("Listing 12.05C"); (4) failing to properly weigh medical opinions; (5) failing to properly weigh other disability determinations; (6) improperly evaluating the evidence; and (7) failing to properly assess Plaintiff's RFC and, in turn, posing an incomplete hypothetical to the vocational examiner ("VE").

## I.    Severe Impairments

Plaintiff contends that the ALJ should have found additional severe impairments at step two because Plaintiff's medical records document a full scale IQ of 70, marked and extreme psychological limitations, obesity, and asthma.

In January 2003, Gerald Hodan, Ph.D. ("Dr. Hodan"), a one-time examiner, reported that Plaintiff had a pleasant and cooperative attitude, spontaneously communicated, spoke clearly and understandably with normal rate and volume, had appropriate affect with full range of thought content, and did not demonstrate a thought disorder or perceptual distortions. (T 306) Test results indicated that Plaintiff had a verbal IQ of 71, a performance IQ of 74, and a full scale IQ of 70. (T 307) Dr. Hodan diagnosed Plaintiff with borderline intellectual functioning as opposed to mental retardation. (T 308) Finding Plaintiff "somewhat limited," Dr. Hodan concluded that Plaintiff could perform simple, routine, repetitive tasks in a low-stress environment. (Id.)

Plaintiff subsequently saw one-time examiners Stephen Sinclair, Ph.D. ("Dr. Sinclair") and Peter Bursten, Ph.D. ("Dr. Bursten"), who both diagnosed borderline intellectual functioning (by history). (T 389, 450) Dr. Sinclair assigned Plaintiff moderate, marked, and extreme mental limitations. (T 390-91) Dr. Bursten, however, after reviewing Dr. Hodan's records and noting Plaintiff's full scale IQ of 70, assigned only mild mental limitations. (T 448, 451-52)

The ALJ thoroughly discussed Dr. Hodan's, Dr. Sinclair's, and Dr. Bursten's opinions. (T

15-17)  Plaintiff emphasizes that Dr. Sinclair found marked and extreme psychological limitations, however, the ALJ assigned minimal weight to that opinion.[1]  Given the ALJ's crediting of certain evidence, including Plaintiff's IQ, diagnoses of borderline intellectual functioning, and assignment of mild mental limitations (T 15-17), any error in failing to identify a severe mental impairment was harmless.  See Street v. Barnhart, 340 F. Supp. 2d 1289, 1293-94 (M.D. Ala. 2004).

As for obesity, Plaintiff's emphasis on her height and weight is misplaced as these characteristics do not establish whether obesity is severe.  Social Security Ruling ("SSR") 02-1p.  Rather, this determination turns on whether obesity, in combination with one or more other impairments, significantly limits a claimant's ability to perform basic work activities.  Id.; see 20 C.F.R. §§ 404.1520(c), 416.920(c). Plaintiff did not claim she was functionally limited by obesity in her application or at the administrative hearing.[2]  Moreover, she does not cite any persuasive evidence[3] indicating that she was functionally limited by obesity.  Plaintiff's emphasis on the opinion of Ladapo Shyngle, M.D. ("Dr. Shyngle"), who concluded that Plaintiff could not walk one block at a reasonable pace on rough or uneven surfaces, is misplaced as Dr. Shyngle did not list obesity among the impairments causing Plaintiff's limitations.  (T 457, 462)   Therefore, the ALJ did not err in declining to identify obesity as a severe impairment.  See James v. Barnhart, 177 F. App'x 875, 878 n.2 (11th Cir. 2006) (per curiam) (unpublished); Wind v. Barnhart, 133 F. App'x 684, 690-91 (11th Cir. 2005) (per curiam) (unpublished).

---

[1] Whether the ALJ properly discounted Dr. Sinclair's opinion is addressed below.

[2] Plaintiff's October 2002 disability report states that her ability to work was limited by an inability to read or write well, asthma, back pain, and a broken leg. (T 186-96) At the administrative hearing, Plaintiff testified that she unsuccessfully tried to lose weight, but did not assert that she was functionally limited by her weight. (T 586-87)

[3] Evidence that the ALJ properly discounted is not considered persuasive.

Finally, Plaintiff fails to cite persuasive evidence that asthma, alone or in combination with another impairment(s), significantly limited her ability to perform basic work activities.[4] See 20 C.F.R. §§ 404.1520(c), 416.920(c). Consequently, remand on this issue is not warranted.

## II.   Obesity and an Inability to Ambulate Effectively

Citing SSR 02-1p,[5] Plaintiff argues that the ALJ should have found her disabled pursuant to a listing because she was obese, unable to ambulate effectively, and diagnosed with degenerative joint disease and a herniated disc. Plaintiff fails to identify any particular listing the ALJ improperly evaluated or should have evaluated, but emphasizes that, in finding Plaintiff unable to walk a block at a reasonable pace on rough or uneven surfaces, Dr. Shyngle concluded that Plaintiff could not ambulate effectively.[6] See Listing 1.00B(2)(b)(2).

SSR 02-1p provides for a disability finding where obesity and another impairment in combination meet the requirements of a listing. Citing SSR 02-1p, the ALJ recognized that obesity can enhance the severity of other impairments. (T 14) However, the ALJ concluded that Plaintiff's

---

[4] Plaintiff's suggestion that the ALJ was bound to find asthma a severe impairment because a previous ALJ did so is without merit as the previous ALJ's opinion was vacated. See Gibbs v. Barnhart, 130 F. App'x 426, 430 (11th Cir. 2005) (per curiam) (unpublished); Ryan v. Astrue, No. 8:08-CV-1011-T-EAJ, 2009 WL 3053691, at *5 n.9 (M.D. Fla. Sept. 18, 2009).

[5] Although SSRs bind the Commissioner, they do not bind the courts as they do not carry the force of law. See Miller v. Comm'r of Soc. Sec., 246 F. App'x 660, 662 (11th Cir. 2007) (per curiam) (unpublished).

[6] Although ineffective ambulation "generally" requires the use of a hand-held assistive device, Listing 1.00B(2)(b)(1), "examples of ineffective ambulation include, but are not limited to ... the inability to walk a block at a reasonable pace on rough or uneven surfaces." Listing 1.00B(2)(b)(2); see Moss v. Astrue, 555 F.3d 556, 562 (7th Cir. 2009) (per curiam). "The criteria do not require an individual to use an assistive device of any kind.... [I]ndividuals with extreme inability to ambulate do not necessarily use assistive devices." Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed. Reg. 58010, 58026-27 (Nov. 19, 2001).

impairments did not satisfy Listing 1.02 (major dysfunction of a joint(s)) or Listing 1.04 (disorders of the spine), both of which may be satisfied in part by an inability to ambulate effectively. (T 18) See Listing 1.02A; Listing 1.04C. In doing so, the ALJ found that Plaintiff could ambulate effectively without assistance based on Plaintiff's testimony that she could walk one-half block at a time without an assistive device and walk on the beach. (Id.)

Although this finding conflicts with Dr. Shyngle's finding, an inability to ambulate effectively does not itself satisfy any listing. Plaintiff emphasizes diagnoses of degenerative joint disease and a herniated disc, but does not cite persuasive evidence satisfying the remaining criteria for Listing 1.02, Listing 1.04, or any other listing.[7] Moreover, Plaintiff cites no persuasive evidence that obesity "increase[d] the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing." SSR 02-1p. As Plaintiff has not met her burden of demonstrating that her impairments satisfied a listing, remand on this issue is unwarranted. See Barron v. Sullivan, 924 F.2d 227, 229 (11th Cir. 1991).

### III.   Listing 12.05C

Plaintiff submits that the ALJ should have found her disabled pursuant to Listing 12.05C (mental retardation) because she had a full scale IQ of 70 and another impairment that imposed significant work-related functional limitations.

Listing 12.05C provides for a disability finding where a claimant's valid verbal, performance,

---

[7] The court declines to scour the record for evidence that Plaintiff's condition satisfied a listing. To do so would overlook that it is Plaintiff's duty to demonstrate that the listing findings are met. Furthermore, "cursory treatment of a potentially important issue is taken by this Circuit to be a sign that the party has abandoned the argument." Callahan v. Barnhart, 186 F. Supp. 2d 1219, 1230 n.5 (M.D. Fla. 2002) (citations omitted).

or full scale IQ is 60 through 70 and the claimant has a physical or other mental impairment that imposes an additional, significant work-related functional limitation. Nonetheless, in evaluating the criteria for Listing 12.05C, "a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted).

In concluding that Plaintiff did not have a severe mental impairment, the ALJ noted that Plaintiff's IQ did not preclude her from completing high school with special classes, completing drivers license requirements, operating an ice cream truck for six months before knee problems caused her to stop doing so, repeatedly maintaining employment for a year at a time, remaining married for nine years before divorcing, caring for herself, cooking, cleaning, shopping, managing her finances, making and keeping health care appointments, and using judgment to obtain urgent care when necessary. (T 15-16) Substantial evidence supports the ALJ's conclusion that Plaintiff's daily activities and behavior were consistent with borderline intellectual functioning, not mental retardation. Consequently, remand on this issue is unwarranted. See, e.g., Milner v. Barnhart, 275 F. App'x 947, 948 (11th Cir. 2008) (per curiam) (unpublished); Popp v. Heckler, 779 F.2d 1497, 1499-1500 (11th Cir. 1986) (per curiam).

### IV. Weight Assigned to Medical Opinions

Plaintiff argues that the ALJ erred by failing to specify the weight assigned to the opinions of treating physicians Scott Raub, D.O. ("Dr. Raub"), Clinton Davis, M.D. ("Dr. Davis"), and Ujwala Iyyunni, M.D. ("Dr. Iyyunni").

An ALJ's failure to specify the weight assigned to a treating physician's opinion is error requiring acceptance of that opinion as true. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir.

1986). However, the error is harmless if the opinion does not conflict with the ALJ's findings. See Caldwell v. Barnhart, 261 F. App'x 188, 191 (11th Cir. 2008) (per curiam) (unpublished); Wright v. Barnhart, 153 F. App'x 678, 684 (11th Cir. 2005) (per curiam) (unpublished).

Plaintiff identifies no limitations assigned by Dr. Raub, Dr. Davis, or Dr. Iyyunni that were omitted from her RFC.[8] Plaintiff overlooks that an RFC need not include a list of a claimant's impairments, but rather must account for limitations stemming from those impairments. See Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citing 20 C.F.R. § 404.1545(a)). As Plaintiff identifies no limitations inconsistent with her RFC, remand on this issue is not warranted.

Plaintiff next contends that the ALJ improperly discounted a May 2006 RFC assessment by treating physician Michael Markou, D.O. ("Dr. Markou").

A treating physician's opinion on the nature and severity of a claimant's impairments is generally given controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). An ALJ must show "good cause" for failing to give substantial weight to a treating physician's testimony. Phillips, 357 F.3d at 1240. Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Id. at 1240-41. Rejection of a treating physician's opinion must be supported by clearly articulated reasons. Id. at 1241.

If a treating physician's opinion does not warrant controlling weight, the ALJ must

---

[8] Despite assigning Plaintiff an 8% impairment rating, Dr. Raub indicated that Plaintiff was capable of performing sedentary work. (T 396) The court declines to scour the record for other evidence of functional limitations consistent with Plaintiff's argument. Plaintiff's failure to cite evidence supporting her argument warrants a finding that the issue is waived as to any such evidence.

nevertheless evaluate the opinion based upon (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the relevant medical issues; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d).

Dr. Markou indicated that Plaintiff could not sit or stand for more than five minutes at a time; could sit, stand, and or/walk for less than two hours in an eight-hour work day; could rarely lift less than ten pounds and never lift more than that; and could rarely twist and never stoop, bend, crouch, or climb. (T 436-38) The ALJ assigned minimal-to-moderate weight to this opinion, finding it inconsistent with Dr. Markou's own treatment notes, which rarely noted objective abnormalities and noted the effectiveness of Plaintiff's medications. (T 22) The ALJ further emphasized that Plaintiff's daily activities and hearing testimony were inconsistent with Dr. Markou's findings. (Id.)

Plaintiff's contention that Dr. Markou's findings are supported by objective medical tests does not undermine the ALJ's conclusion that those findings were inconsistent with Dr. Markou's own treatment notes. Further, Plaintiff's assertion that her daily activities are consistent with disability does not mean the ALJ was precluded from considering Plaintiff's ability to perform those activities despite the extreme limitations set forth in Dr. Markou's opinion. In failing to challenge the ALJ's stated reasons for discounting Dr. Markou's opinion, Plaintiff has not demonstrated that the ALJ improperly discounted that opinion.

Plaintiff also contends that the ALJ erred by crediting Dr. Bursten's opinion over Dr. Hodan's and Dr. Sinclair's opinions regarding Plaintiff's mental impairments. All three were one-time examiners, but the ALJ assigned great weight only to Dr. Bursten's opinion, finding it

10

consistent with the medical evidence, Plaintiff's employment history, Plaintiff's daily activities, and the sparse mental health treatment Plaintiff obtained during the relevant period. (T 15) The ALJ further reasoned that Dr. Bursten had a better long-term view of Plaintiff's mental condition as he reviewed not only his own test results but also prior evidence of Plaintiff's mental condition. (Id.) Moderate weight was assigned to Dr. Hodan's opinion because he did not review any medical records before his evaluation. (T 16) The ALJ assigned minimal weight to Dr. Sinclair's opinion, reasoning that it was inconsistent with Dr. Sinclair's clinical observations,[9] with Plaintiff's employment history, and with Plaintiff's ability to operate an ice cream truck for six months before knee problems caused her to stop doing so. (T 17) The ALJ also noted that Dr. Sinclair stated that the results of a personality test "should be interpreted with caution" due to a possibility of malingering. (T 17, 388)

There is no question that Dr. Bursten's, Dr. Hodan's, and Dr. Sinclair's opinions conflict as to the severity of Plaintiff's mental limitations. However, it is for the ALJ, not the court, to resolve such inconsistencies in the evidence as long as substantial evidence supports the ALJ's opinion. Wolfe v. Chater, 86 F.3d 1072, 1079 (11th Cir. 1996) (citation omitted). The ALJ did not reversibly err in reasoning that Dr. Bursten's opinion was the most consistent with Plaintiff's employment history, daily activities, and mental health treatment history. Consequently, remand on this issue is unwarranted.

**V.     Other Disability Determinations**

Plaintiff submits that the ALJ erred by failing to assign proper weight to findings by Health

---

[9] Dr. Sinclair indicated that Plaintiff had adequate speech and language skills, was cooperative and friendly, recalled and understood instructions, and had good attention and concentration. (T 387)

11

and Human Services, the State of Florida, and a workers' compensation insurer.

In December 1997, more than four years before Plaintiff's alleged disability onset date, Plaintiff saw Dr. Raub for back pain stemming from a work-related injury. (T 397) The following month, based on the Florida Uniform Permanent Impairment Rating Schedule (1996), Dr. Raub concluded that Plaintiff had an 8% whole person impairment rating. (T 396)

In July 2004, Plaintiff saw Dr. Markou for the first time. (T 366) Offering to provide documentation of Plaintiff's condition in connection with her application for Social Security benefits, Dr. Markou completed a medical verification form indicating that Plaintiff was indefinitely precluded from working. (T 365, 367) In January 2005, Plaintiff asked Dr. Markou to complete another medical verification form in connection with Plaintiff's application for food stamps. (T 381-82) Dr. Markou did so, again indicating that Plaintiff was indefinitely precluded from working. (T 369-70) At the administrative hearing, Plaintiff testified that she was receiving food stamps. (T 577)

In discussing Dr. Raub's and Dr. Markou's findings, the ALJ noted that, pursuant to Social Security regulations, such as 20 C.F.R. § 404.1504, an ALJ is not bound to follow a decision by a governmental or non-governmental agency. (T 22-23) Plaintiff contends that in doing so the ALJ recognized that other agencies and a workers' compensation insurer found Plaintiff disabled. However, Plaintiff cites no authority holding that a medical record or the receipt of food stamps constitutes a disability finding by another agency. Indeed, Plaintiff cites no evidence from an agency or insurer making such a finding. Because the ALJ had no duty to assign weight to findings that were not part of the record, remand on this issue is unwarranted.

## VI.    Evaluation of the Evidence

Plaintiff submits that the ALJ erred by failing to adequately evaluate Dr. Raub's and Dr. Davis's opinions as to the presence of herniated discs.

In October 1997, more than four years before her alleged disability onset date, Plaintiff saw Dr. Davis for an orthopedic consultation. (T 402) Dr. Davis noted that a May 1997 MRI ordered by Roberto Dominguez ("Dr. Dominguez") showed moderate central spinal stenosis but no disc herniations. (Id.) The following month, Dr. Davis reported that a CT/myelogram confirmed that Plaintiff did not have a significant disc herniation. (T 401)

Three weeks later, Dr. Raub reaffirmed Dr. Davis's conclusion that the CT/myelogram did not indicate a disc herniation. (T 398) Nonetheless, stating that Dr. Dominguez had found a small herniated disc based on the MRI, Dr. Raub diagnosed a small disc herniation.[10] (T 397, 399) The following month, Dr. Raub restated this diagnosis. (T 395)

The ALJ found that Plaintiff's severe impairments included chronic low back pain secondary to central spinal stenosis at L4-L5 but no disc herniations. (T 14) The ALJ noted Dr. Davis's finding of moderate central spinal stenosis with no disc herniations, but pointed out that Dr. Davis's records were not generated during the relevant period. (T 19) The ALJ's discussion of Dr. Raub's opinion was limited to the 8% whole person impairment rating assigned years before the alleged onset of disability. (T 22)

Plaintiff submits that the ALJ's finding of no disc herniations was error in light of Dr. Raub's contrary finding. Given that Dr. Raub's opinion predated Plaintiff's alleged onset date by more than four years, the opinion was of "limited relevance." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1165 (9th Cir. 2008). In any event, Dr. Raub himself indicated that he did not believe

---

[10] Whether Dr. Raub's restatement of Dr. Dominguez's finding was based on Plaintiff's representation or review of Dr. Dominguez's records is unclear from the record.

the disc herniations were the etiology of Plaintiff's chronic pain. (T 399) Moreover, Plaintiff cites no persuasive evidence of limitations stemming from disc herniations that are not accounted for in Plaintiff's RFC. Given the record as a whole, the ALJ's failure to reconcile his finding with Dr. Raub's diagnosis was at most harmless error that does not justify remand.

Plaintiff also submits that the ALJ erred by failing to mention Plaintiff's testimony that she had carpal tunnel surgery in the 1970s and that a doctor thought she might require it again. (T 580-81) However, the ALJ expressly recognized that Plaintiff "reported ... carpal tunnel releases." (T 19). Regardless, given that the ALJ discounted Plaintiff's subjective testimony to the extent it was inconsistent with her RFC (T 19), and Plaintiff's failure to cite persuasive evidence that she was functionally limited by carpal tunnel syndrome, remand on this issue is unwarranted.

## VII.     The RFC Assessment and the VE Hypothetical

Plaintiff submits that the ALJ failed to comply with SSR 96-8p, which articulates policies and policy interpretations regarding RFC assessments, and in turn presented an incomplete hypothetical to the VE.[11] Plaintiff further takes issue with the ALJ's criticism of Plaintiff's counsel's hypothetical.

Plaintiff contends that the RFC should have incorporated Dr. Shyngle's finding that Plaintiff could not walk one block at a reasonable pace on rough or uneven surfaces. The ALJ assigned great weight to Dr. Shyngle's opinion, but did not mention this particular finding. However, the RFC did include a "sit/stand option at-will (at the claimant's discretion)." (T 18) The ALJ clarified that

---

[11] Plaintiff's argument that the ALJ erred by failing to incorporate limitations stemming from Plaintiff's right shoulder problem is waived as Plaintiff fails to cite any persuasive evidence documenting such limitations. Plaintiff's argument that her IQ score, herniated discs, muscle tenderness, need to lie down because of pain, and leg problems precluded her from working in a timely manner is also waived as Plaintiff cites no persuasive evidence indicating that she was so limited by any of these conditions.

14

Plaintiff could sit or stand at will throughout the workday for as long as she desired. (T 25) This limitation relieved Plaintiff from any need to walk one block at a reasonable pace on rough or uneven surfaces. Because the VE hypothetical also included the option to sit/stand at will (T 607-08), there was no need for the hypothetical to also preclude walking one block at a reasonable pace on rough or uneven surfaces.

Plaintiff also argues that the RFC and VE hypothetical should have accounted for Plaintiff's herniated discs and carpal tunnel syndrome. Plaintiff overlooks that an RFC need not include a list of a claimant's impairments, but rather must account for limitations stemming from those impairments. See Phillips, 357 F.3d at 1238 (citing 20 C.F.R. § 404.1545(a)). As Plaintiff fails to cite persuasive evidence that either condition limited her beyond her RFC, remand on this issue is unwarranted.

Finally, Plaintiff takes issue with the ALJ's criticism of Plaintiff's counsel's hypothetical. When Plaintiff's counsel asked the VE to assume a hypothetical person with mild-to-moderate problems dealing with co-workers, supervisors, and the public, the ALJ expressed concern as to what mild-to-moderate meant and suggested that the hypothetical should indicate the frequency at which Plaintiff could perform these tasks. (T 609) Plaintiff submits this was error because the ALJ's own hypothetical described Plaintiff's psychological restrictions as mild and Dr. Sinclair indicated that Plaintiff had marked or extreme limitations in her ability to interact with co-workers, supervisors, and the public. (T 391, 605) As for the ALJ's use of the term mild, the ALJ immediately explained that this meant Plaintiff would be able to satisfactorily carry out and remember instructions, make judgments and work-related decisions, and interact appropriately with the public, supervisors, and co-workers. (T 605) The ALJ's request for counsel to clarify what mild-to-moderate meant did not

15

reflect bias or unfairness justifying remand. Moreover, given that Dr. Sinclair's opinion was discounted, any error in limiting counsel's ability to incorporate Dr. Sinclair's limitations into a hypothetical was harmless. Therefore, remand on this issue is unwarranted.

### Conclusion

The ALJ's decision is supported by substantial evidence and the proper legal principles. The decision of the Commissioner should therefore be affirmed.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1) the decision of the Commissioner be **AFFIRMED** and this case dismissed, with each party to bear its own costs and expenses; and

(2) the Clerk of the Court be directed to enter final judgment in favor of Defendant consistent with 42 U.S.C. 405(g) and close this case.

**Date: June 2, 2011**

_____
ELIZABETH A JENKINS
United States Magistrate Judge

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).


Copies to:
Counsel of Record

District Judge